IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES ANDREW LOEWENDICK        *

    V.                       *    CIVIL NO. SKG-11-1581

CSX TRANSPORATION, INC.        *


<u>MEMORANDUM OPINION</u>


This is a Federal Employer's Liability Act ("FELA") case brought against CSX Transportation, Inc. ("CSXT").  On March 17, 2010, plaintiff James Loewendick, a boilermaker and CSXT employee, was assigned to work with Terry Peterson, a CSXT electrician, to change the batteries in four locomotives. Plaintiff alleges that in the course of his employment that day, doing that assigned task, CSXT failed "to provide plaintiff with sufficient personnel and necessary tools and equipment to safely [remove the battery cover] [and] the door fell while being removed, dropping approximately 5½ feet onto plaintiff's foot and resulting in . . . serious, painful and permanent personal injuries . . ."  (ECF No. 1, ¶ 11).

Defendant moves for summary judgment arguing that the undisputed evidence establishes that plaintiff's own negligence was the sole course of the accident, entitling CSXT to summary judgment under governing law.  (ECF No. 31-1).

1

Briefing is complete.  A telephone hearing was held on January 31, 2013.  For the reasons set forth below, the Court agrees with CSXT and enters summary judgment in its favor.  Also pending are Defendant's Objection and Motion to Strike an exhibit attached to plaintiff's opposition to summary judgment (ECF No. 37), and Defendant's Motion to Strike Plaintiff's Supplemental Discovery Response (ECF No. 30). The Court also grants these motions.

### Defendant's Motion for Summary Judgment (ECF No. 31)

### Governing Law

Summary judgment under Fed. R. Civ. P. 56 is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Material" facts are those that might affect the outcome of the case under the governing law.  Id.  The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).

When considering a motion for summary judgment, the court views all facts and makes all reasonable inferences in the light

most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must show that specific, material facts exist to create a genuine, triable issue. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  On those issues for which the non-moving party has the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in the rule. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).

The role of the Court at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter," but rather to determine whether "there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986).  The issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

While a court must draw all reasonable inferences in favor of the non-moving party when ruling on a summary judgment motion, that party may not create a genuine issue of material fact through mere speculation, or building one

3

inference upon another.  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985); see also Runnebaum v. NationsBank of Maryland, N.A., 123 F.3d 156, 164 (4th Cir. 1997)(noting that unsupported speculation is not enough to defeat a motion for summary judgment); Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995) (holding that only reasonable inferences from the evidence need be considered by the court, and that it is the duty of the court to withdraw from the jury a case if a necessary inference is so tenuous that it rests on speculation or conjecture).

The Court has reviewed carefully the factual record in the light most favorable to the plaintiff, the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The Court finds that there is no dispute as to material fact and that no reasonable jury would conclude that CSXT was negligent, to any degree, in this accident.  Evans v. Technologies App. & Serv. Co., supra.  Rather, the evidence demonstrates and a reasonable jury would find that plaintiff's own negligence was the sole cause of his injury, entitling CSXT to judgment.

**Analysis**

In his complaint, plaintiff alleges that his injury was caused by CSXT's negligence in providing insufficient tools and equipment and insufficient personnel resulting for the locomotive battery cover removal.

There are no disputes as to any material facts as to work activities the day of the accident.  As CSXT states in its memorandum discussing the evidence on the lack of necessary tools and equipment.

> [Plaintiff] and Peterson were partnered to change the batteries in four locomotives.  See Plaintiff's Depo., at 50.  Plaintiff then conducted a job briefing for the men, wherein he discussed how they would remove battery covers.  Id. at 53-55.  After the job briefing, Peterson began to work on the batteries while Plaintiff got his 'air gun, [] sockets and everything the [he] needed to do [his] job.'  Id. at 56.  Plaintiff concedes, both in his deposition as well as in the report that he prepared immediately after the incident, that these tools were not defective.  Id. at 92; see also Injury Report at p. 2 ('Did defective tool or equipment cause incident? No.').  Moreover, at his deposition, Plaintiff expressly disclaimed this allegation, limiting his allegation of negligence to a theory of lack of personnel.

(ECF No. 31-1, 7).  In its opposition, plaintiff does not controvert this evidence on the claim of inadequate tools and equipment.

As to the claim of inadequate personnel assistance with removal of the battery cover, the record is undisputed as stated above, that before a break, plaintiff and a co-worker, Mr.

Peterson were assigned to and were preparing to remove the

battery cover together.  Plaintiff, however, testified that his

co-worker, Mr. Peterson, did not return from the break and some

ten minutes after plaintiff had expected him to return, he

undertook to remove the battery cover without assistance,

unsuccessfully and with the resulting physical injury.  CSXT

does not dispute Mr. Loewendick's testimony that Mr. Peterson

did not return in the time that would be expected after a break,

but argues that

> Plaintiff took no affirmative steps to find him, or
> otherwise find help to remove the battery cover.
> Rather, Plaintiff proceeded on his own to perform a
> task that he, in hindsight, perceives to have been
> unsafe.  Instead of dismounting the locomotive to look
> for Peterson and determine his whereabouts, Plaintiff
> assumed that he had been reassigned to another unit.
> Id. at 102.  Instead of seeking assistance from his
> supervisors, or other co-workers, he assumed that he
> would be told to complete the task alone because he
> assumed that help was unavailable.  Id. at 65, 68.
> Moreover, Plaintiff did nothing to determine whether
> anyone within hearing or walking distance could have
> helped, although employees commonly helped one
> another.  Id. at 69-70, 104.

(ECF No. 31-1, 10).

Notwithstanding these essentially[1] undisputed facts, plaintiff

charges that CSXT's negligence is two-fold: (1) in failing to

provide a partner to assist him in the job of changing the

---

[1] While plaintiff in its opposition suggests that plaintiff made a reasonable
attempt to locate assistance, (ECF No. 35-1), plaintiff's deposition
testimony indicates otherwise.  When Mr. Peterson did not return when
plaintiff thought he should, he did not come down from the locomotive to look
for him.  (ECF No. 31-4, 45, 27), nor look for his supervisors or anyone
nearby to assist him.  (Id.)

battery (ECF No. 35-1, 19) and (2) in "creating a climate where employees were subjected to punitive measures for placing safety above production," thereby discouraging employees from asking for help and encouraging them to engage in unsafe practices to get the job done.  (ECF No. 35-1, 19-20).

As Wright, Miller and Kane succinctly states:  "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists.  If no such issue exists the rule permits the immediate entry of judgment."  Wright, Miller & Kane, Federal Practice and Procedure:  Civil 3d § 2725. No genuine issue of material fact exists in this case.  Thus, defendant is entitled to entry of judgment as a matter of law. The key and undisputed facts are these:

- On March 16, Mr. Loewendick was assigned a partner to change the locomotive battery.

- There is no evidence that CSXT withdrew that partner's assistance or indeed knew that the partner had not returned from break.[2]

- No supervisor ordered plaintiff that night to do the job without a partner.

- Other than look around from the top of the locomotive, he did nothing to locate his missing partner, locate a supervisor or obtain any assistance in any other way.

---

[2] Mr. Loewendick described Mr. Peterson as "absolute[ly]" a conscientious employee, who usually returned promptly to the job site after breaks.  (ECF No. 31-4, 47).  Plaintiff testified that he and Mr. Peterson had removed battery covers successfully on 25-30 occasions prior to the accident. (ECF No. 31-4, 51).

- Plaintiff said he had been denied assistance in the past for this job but not in every instance.

- He believed it was unsafe to do the job alone. Nonetheless, he testified:

  I probably waited ten minutes or so and Terry never showed back up.  And then I thought, well I better get this job done, and kinda went through a little self job briefing to myself and basically same thing as I did before and started taking the covers off to remove the batteries.

(ECF No. 31-4, 15).

These undisputed facts defeat plaintiff's first theory of CSXT negligence.

Plaintiff's second theory of negligence is no more successful.  Under this theory, he attempts to excuse his going forward without help or even without asking for help, arguing that it would have been essentially futile to ask for help and if he did ask for help, he would be penalized.

Again, taking the facts in the light most favorable to plaintiff, the non-moving party, for purposes of this motion, it is established that on some occasions one of his supervisors was unwilling to give him help on some jobs.  According to plaintiff, Greg Amezuca – one of his two supervisors – was unwilling to give him help on some unidentified jobs ("Basically got told to do the job, he didn't have no one to give me").  (ECF

No. 35, 3, 17).  Mr. Loewendick couldn't remember exactly how often that happened, but answered:

> A.  More than one occasion.  I mean, it's just – it all depends on what the job was required and what we needed done.
>
> Q.  You can't recall how many times it happened?
>
> A.  No.  You now, it's just – it's a working environment.  I mean, we're there to do a job, you know, and we just try to get it done the best that we could.

(ECF No. 31-4, 18).

However, he acknowledged that another supervisor, Mr. Flashcamp, did often respond to his request for assistance on tasks.  (Id.).  Both of these supervisors were on duty on March 17, and were in the immediate vicinity of the locomotive – a couple of hundred yards away.  (ECF No. 31-4, 14,16).

Moreover, even in response to questioning from his own attorney in deposition, he acknowledged that assistance was provided on request in the past on some (but not many) times when he sought it.  Mr. Loewendick testified that when he asked for a second person to assist in battery removal, the "general response" from his supervisors was:  "Don't have no one," with assistance provided in "almost none" of the times.  (ECF No. 31-4, 46).  Accord (ECF No. 31-1, 64).  ("Well I figured that I better just go ahead and do the job myself because through past experiences with Greg being the way he is and asking for help,

9

which we never usually got anyway, I just figured I would go ahead and do the job myself.")(ECF No. 31-4, 17).

This testimony must be viewed in the context of his other testimony.  First, while he suggests that a request for help would be largely, if not entirely futile, he testified that if he "had known [before the break] that after the break Mr. Peterson would be leaving the job . . . [he] could have probably asked for help if I knowed he wasn't going to be there."  (ECF No. 31-4, 44).  That testimony, of course, is inconsistent with his position that a request would be futile.  If he would ask for help before the break, why wouldn't he ask for help after the break when Mr. Peterson did not return as expected.  Secondly, Mr. Lowendick also acknowledged that co-workers would help each other with tasks, without the intervention or direction of supervisors. (ECF. No 31-4, 18).  All of this testimony demonstrates that a request for help would not necessarily have been futile.

Moreover, plaintiff testified that he verbally complained to one of his supervisors about having to change the batteries alone as it was unsafe two or three times.  (ECF No. 31-4, 25-26).  However, Mr. Loewendick denied ever filing any Unsafe Condition Reports or any other written report or complaint with the company, or bringing the concern to the safety committee meetings.  Similarly, he did not bring the concern to the state

or union or with any federal work safety agency complaining about the company's requirement of removal of battery covers without personnel assistance. (ECF No. 31-4, 28, 39).

Mr. Loewendick acknowledged that if he believed that anything he was asked to do was unsafe, he was supposed to complain or bring it to someone's attention. (ECF No. 35-3, 38). Finally, Mr. Loewendick acknowledged that the company rule books provide that if there's a job that an employee believes is unsafe that employee has the absolute right not to do it. (ECF No. 31-4, 39).

Notwithstanding the fact that he did not think it safe to remove the battery cover alone, he went ahead and did it on March 17, explaining "[b]ecause the more you ask for help down there – and I know it is written in stone, so to speak. They say if it's not a safe job, don't do it, you're going to live a living hell down there." (ECF No. 35-3, 25).[3] However, there is no specific testimony or other evidence that plaintiff was in any way penalized when he asked for help. At one point, he appeared to say that it was his "opinion" that he had had good work taken from him for asking for help though he suggested that

---

[3] The Court can only guess that notwithstanding his expressed concern about the safety of doing the job alone, Mr. Loewendick went forward because he had had no problem in doing this job alone on many occasions. Mr. Loewendick testified that he had removed battery covers alone approximately 20 times over the course of his career. (ECF No. 31-4, 20, 25). On those prior occasions, he did not have any problem with the battery cover slipping or any problem with his ability to hold the battery cover. (ECF No. 31-4, 25).

all boilermaker work was nasty.  But his testimony was highly
equivocal without any factual specifics.  (ECF No. 35-3, 26).
Finally, he admitted that he was never reprimanded in any way
nor told that he was going to get in any kind of trouble for
asking for help.  (ECF No. 31-4, 17, 18).

The Court appreciates the low bar for plaintiffs in FELA
cases in terms of evidence of employer negligence to proceed to
a jury.  Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 506
(1957).  But it has not been met here.  Rather, a reasonable
jury could not return a verdict for the plaintiff, but would
necessarily find that plaintiff is own negligence was the sole
cause of the accident.

Here, plaintiff admits that he was assigned a partner to
assist in changing the batteries, that partner failed to return
as quickly as plaintiff anticipated to assist with the task,
that he believed that it was unsafe to remove it alone but went
ahead anyway.  There is no evidence on why Mr. Peterson did not
come back at the time Mr. Loewendick expected and there is
certainly no evidence that the CSXT supervisors removed or
reassigned Mr. Peterson and no evidence that CSXT ordered Mr.
Loewendick to do the task alone.[4]  He frequently was assigned a
partner to do this task, though according to him, he was denied

---

[4] Moreover, as defendant notes that "even if the Court were to find that
Plaintiff was not provided assistance to remove the battery

assistance in some cases.  However, a partner had been assigned

on March 17 and when he did not return from break when he

expected, he made <u>no</u> attempt to get any help.  The situation is

summed up in this deposition question and answer.

> Q. In the past when you have requested assistance, to
> obtain a second person, what was the general response
> that  you received from your Supervisor?
>
> A. Don't have no one.
>
> Q. And out of a percentage of a hundred percent with
> the number of times that you requested additional
> help, what percentage of the time was that help
> provided?
>
> A. Almost none.
>
> Q. It's fair to say that particular night you can't
> say with certainty what would have happened because
> you didn't ask for help, Correct?
>
> A. I guess.

(ECF No. 31-4, 46)

Plaintiff has personal responsibility for the risk he knew

in proceeding alone, a risk he took and regrettably he was

injured, in doing so.  There are no facts allowing him to "shift

the blame" to CSXT and establish its negligence.  "[A]n employer

is not liable under FELA if the evidence establishes that the

sole cause of an employer's injuries is the employee's failure

to exercise reasonable care for his own safety." <u>Lanham v. CSX</u>

<u>Transportation, Inc.</u>, 1993 U.S. App. LEXIS 13045 *6 (4th Cir.

1993).  Plaintiff's case against defendant is built on

speculation.  See Wadiak v. Illinois Central R. Co., 208 F.2d
925, 929 (7th Cir. 1953)("[I]n the absence of proof that such aid
was sought and was denied to him or that any need for help was
brought to defendant's notice, plaintiff cannot rely on this
contention [that the railroad was negligent in failing to
provide assistance].").  Accordingly, the motion is granted.

**Defendant's Objection and Motion to Strike (ECF No. 37)**

CSXT filed an Objection and Motion to Strike Exhibit B
which was attached to Plaintiff opposition to Defendant's Motion
for Summary Judgment (ECF No. 37).  CSXT argued that this
exhibit was an unauthenticated document inadmissible at summary
judgment, citing Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir.
1993); Miskin v. Baxter Healthcare Corp., 107 F. Supp. 2d 669,
671 (D. Md. 1999) and Fed. R. Civ. P. 56.  Those cases – and the
text of the rule - plainly support CSXT's motion.  Plaintiff did
not attempt to distinguish those cases, but simply declared that
the document is "self authenticating." (ECF No. 40, 2).  CSXT
replied that the document was not self-authenticating under
F.R.E. 901(a) and 902.  This exhibit, a purported portion of a
safety manual, does not appear to fall within any of the rule's
12 identified "self-authenticating" items of evidence.

Plaintiff did not so argue.  Accordingly, the Court grants the motion to strike.[5]

### Defendant's Motion to Strike Plaintiff's Supplemental Discovery Response (ECF No. 30)

Defendant filed this motion asking that the Court strike the plaintiff's July 11, 2012 supplementation of his answer to interrogatory no. 11, identifying five persons with knowledge relevant to the case.  Plaintiff filed no opposition to this motion.  While moot given the earlier ruling, the Court grants the motion.

This supplementation was provided three months after close of discovery which was April 13, 2012, and after the parties had advised the Court that deposition and written discovery had been completed.  Notably, the discovery deadline had been extended several times, at least once solely on plaintiff's request.  Moreover, this supplemental disclosure came less than three weeks before the July 30 deadline for dispositive pretrial motions.  Finally and most critically to the Court, the plaintiff offers no explanation for its tardy identification of five persons with knowledge and no rejoinder to defendant's assertion of prejudice.  Accordingly, the motion is granted.

---

[5] The purported portion of the CSXT safety manual in any event, would not appear to change the result, if considered.  CSXT never argued that two people were not required for the job and never admitted that it was the policy to depart from the safety manual.

Accordingly, defendant's three motions are granted. A separate order consistent with this opinion shall be entered.


Date: 2/7/2013____                    _____/s/_____
                                      Susan K. Gauvey
                                      United States Magistrate Judge